# EXHIBIT A

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
PINGORA LOAN SERVICING, LLC

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
MICHAEL GARCIA, individually and on behalf of all others similarly situated

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>580 Texas Street<br>Fairfield, CA 94533 | CASE NUMBER: *(Número del Caso):*<br>FCS058137 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Abbas Kazerounian, Esq. Mona Amini Esq., Kazerouni Law Group APC, 245 Fischer Ave, D1, Costa Mesa, CA 92626; (800) 400-6808

DATE:
*(Fecha)*   **APR 2 2 2022**
Clerk, by · K. Fellersen , Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010).)*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
☐ other *(specify):*

4. ☐ by personal delivery on *(date)*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courts.ca.gov

# EXHIBIT B

1  **KAZEROUNI LAW GROUP, APC**
   Abbas Kazerounian, Esq. (SBN: 249203)
2  ak@kazlg.com
   Mona Amini, Esq. (SBN: 296829)
3  mona@kazlg.com
   245 Fischer Avenue, Unit D1
4  Costa Mesa, California 92626
   Telephone:  (800) 400-6808
5  Facsimile:  (800) 520-5523

6  **THE CARDOZA LAW CORPORATION**
   Michael F. Cardoza, Esq. (SBN: 194065)
7  Mike.Cardoza@cardozalawcorp.com
   548 Market Street, #80594
8  San Francisco, CA 94104
   Telephone: (415) 488-8014
9  Facsimile: (415) 651-9700

10  *Attorneys for Plaintiff*
    *Michael Garcia and the putative class*

11

12                SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                 FOR THE COUNTY OF SOLANO – COMPLEX CIVIL

14  MICHAEL GARCIA, individually and on behalf      Case No. FCS058137
    of all others similarly situated,
15                                                   CLASS ACTION COMPLAINT FOR
                          Plaintiff,                 VIOLATIONS OF:
16
                                                     1.  CALIFORNIA CONSUMER PRIVACY
17        vs.                                            ACT OF 2018, CAL. CIV. CODE §§
                                                         1798.100, *et seq.; and*
18  PINGORA LOAN SERVICING, LLC.,                    2.  CALIFORNIA UNFAIR COMPETITION
                                                         LAW, CAL. BUS. & PROF. CODE
19                        Defendant.                      §§ 17200, *et. seq.*

20                                                   DEMAND FOR JURY TRIAL

21

22

23                                                   ASSIGNED TO
                                                     JUDGE Stephen Gizzi
24  //                                               FOR ALL PURPOSES

25  //

26  //

27  //

28  //
                                  - 1 -
                          CLASS ACTION COMPLAINT

FILED/ENDORSED
Clerk of the Superior Court

APR 22 2022

By K. Fellexsen
DEPUTY CLERK

$1435- CMFF416727

By Fax

KAZEROUNI
LAW GROUP. APC

1    Plaintiff MICHAEL GARCIA ("Plaintiff"), individually and on behalf of himself and the
2  general public and all others similarly situated ("Class members"), by and through his attorneys,
3  upon personal knowledge as to facts pertaining to himself and on information and belief as to all
4  other matters, brings this class action against Defendant PINGORA LOAN SERVICING, LLC
5  ("Defendant" or "Pingora"), and alleges as follows:

6                              **NATURE OF THE CASE**

7        1.      This is a data breach class action against Defendant and its related entities,
8  subsidiaries, and agents for failing to secure and safeguard the personally identifiable information
9  ("PII") that Defendant collected and maintained and for failing to provide timely and adequate
10 notice to Plaintiff and other Class members that their information had been stolen. Defendant is a
11 mortgage servicing company in the United States which is a subsidiary of Pingora Asset
12 Management, LLC, a specialized asset manager focused on investing in and servicing of new
13 production performing mortgage servicing right ("MSR") portfolios. For its business purposes,
14 Defendant collects, receives, and maintains a substantial amount of PII from homeowners, like
15 Plaintiff, in its servers and/or networks.

16       2.      On or about April 6, 2022, Defendant issued a Notice of Data Breach letter
17 announcing that there had been unauthorized access to its file servers which was identified in early
18 December 2021, and it determined that an unauthorized person obtained access to its file storage
19 servers from October 27, 2021 to December 7, 2021. (the "Data Breach"). Defendant conducted a
20 review of the files that were accessed in the Data Breach and on March 7, 2022, its review process
21 determined files containing Plaintiff's and other similarly situated individuals' PII, including
22 names, addresses, loan account numbers, and Social Security numbers, were included in the files
23 accessed and/or obtained in the Data Breach. The Notice of Data Breach letter further indicated that
24 the accessed files may also have included information provided in connection with a loan
25 application, loan modification, or other items regarding loan servicing.

26       3.      Although the Data Breach was identified in December 2021, placing sensitive
27 customer information in the hands of malicious actors as a result of Defendant's failure to safeguard
28 Plaintiff's and others' PII, Defendant waited several months until on or around April 6, 2022 to

KAZEROUNI
LAW GROUP, APC

1 | provide the Notice of Data Breach to Plaintiff and other similarly situated customers. This notice
2 | was still lacking in information necessary for Plaintiff and Class members to understand the scope
3 | and severity of the Data Breach. Due to this lapse in time between the Data Breach and Defendant's
4 | notice to affected customers, unauthorized third parties have already been able to acquire and sell
5 | Plaintiff's and the Class members' PII on the black market or dark web, or otherwise fraudulently
6 | misuse it for their personal gain.

7 | 4. Defendant owed a duty to Plaintiff and Class members to implement and maintain
8 | reasonable and adequate security measures to secure, protect, and safeguard the PII it collected from
9 | its customers and maintained for business purposes and stored on its networks.

10 | 5. Defendant breached that duty by, *inter alia*, failing to implement and maintain
11 | reasonable security procedures and practices to protect PII from unauthorized access and storing
12 | and retaining Plaintiff's and Class members' personal information on inadequately protected servers
13 | and/or networks.

14 | 6. The Data Breach happened because of Defendant's inadequate cybersecurity, which
15 | caused Plaintiff's and Class members' PII to be accessed, viewed, stolen and/or disclosed to
16 | unauthorized persons. This action seeks to remedy these failings. Plaintiff brings this action on
17 | behalf of himself individually and on behalf of all other similarly situated California residents
18 | affected by the Data Breach.

19 | 7. As set forth in the Prayer for Relief, among other things, Plaintiff seeks, for hmself
20 | and the Class, equitable relief, including public injunctive relief, and actual damages.

21 | **VENUE AND JURISDICTION**

22 | 8. This Court has jurisdiction over this action pursuant to Cal. Code Civ. Proc. § 410.10
23 | and Cal. Bus. & Prof. Code §§ 17203-17204, 17604. This action is brought as a class action on
24 | behalf of Plaintiff and Class members pursuant to Cal. Code Civ. Proc. § 382.

25 | 9. This Court has personal jurisdiction over Defendant because Defendant's regularly
26 | conducts business in California and with California consumers.

27 |

28 |

KAZEROUNI
LAW GROUP, APC

10.   Venue is proper in this Court pursuant to Cal. Code Civ. Proc. §§ 395 and 395.5 because Defendant regularly conducts business in this county, and unlawful acts or omissions have occurred in this county.

## PARTIES

11.   At all relevant times, Plaintiff resided in Solano County, California. Plaintiff is a homeowner whose mortgage was serviced by Defendant and had his personal information and PII collected and maintained by Defendant.

12.   As a result of Defendant's failure to implement and maintain reasonable security procedures and practices appropriate to the nature of the personal information it collected and maintained, Plaintiff's PII accessed, exfiltrated, viewed, stolen and/or disclosed to unauthorized persons in the Data Breach.

13.   Defendant is a limited liability company organized under the laws of the state of Delaware with its principal place of business and/or headquarters located at 1819 Wazee Street, 2nd Floor, Denver, Colorado 80202.

## FACTUAL ALLEGATIONS

### PII Is a Valuable Property Right that Must Be Protected

14.   The California Constitution guarantees every Californian a right to privacy. And PII is a recognized valuable property right.[1] California has repeatedly recognized this property right, most recently with the passage of the California Consumer Privacy Act of 2018.

15.   In a Federal Trade Commission ("FTC") roundtable presentation, former Commissioner, Pamela Jones Harbour, underscored the property value attributed to PII by observing:

> Most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be

---

[1]   *See* John T. Soma, et al., *Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets*, 15 RICH. J.L. & TECH. 11, at *2 (2009) ("PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets.") (citations omitted).

- 4 -

KAZEROUNI
LAW GROUP, APC

commercially valuable. Data is currently the larger the data set, the greater potential for analysis – and profit.[2]

16. The value of PII as a commodity is measurable. "PII, which companies obtain at little cost, has quantifiable value that is rapidly reaching a level comparable to the value of traditional financial assets."[3] It is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market" for several years.

17. Companies recognize PII as an extremely valuable commodity akin to a form of personal property. For example, Symantec Corporation's Norton brand has created a software application that values a person's identity on the black market.[4]

18. As a result of its real value and the recent large-scale data breaches, identity thieves and cyber criminals openly post credit card numbers, Social Security numbers, PII and other sensitive information directly on various illicit Internet websites making the information publicly available for other criminals to take and use. This information from various breaches, including the information exposed in the Data Breach, can be aggregated and become more valuable to thieves and more damaging to victims. In one study, researchers found hundreds of websites displaying stolen PII and other sensitive information. Strikingly, none of these websites were blocked by Google's safeguard filtering mechanism – the "Safe Browsing list."

19. Recognizing the high value that consumers place on their PII, some companies now offer consumers an opportunity to sell this information to advertisers and other third parties. The idea is to give consumers more power and control over the type of information they share – and who ultimately receives that information. By making the transaction transparent, consumers will

KAZEROUNI
LAW GROUP, APC

---

[2] FTC, *Statement of FTC Commissioner Pamela Jones Harbour* (Remarks Before FTC Exploring Privacy Roundtable) (Dec. 7, 2009), https://www.ftc.gov/public-statements/2009/12/remarks-ftc-exploring-privacy-roundtable.
[3] *See* Soma, *Corporate Privacy Trend, supra.*
[4] Risk Assessment Tool, Norton 2010, www.everyclickmatters.com/victim/assessment-tool.html.

- 5 -

make a profit from the surrender of their PII.[5] This business has created a new market for the sale and purchase of this valuable data.[6]

20.    Consumers place a high value not only on their PII, but also on the privacy of that data. Researchers shed light on how much consumers value their data privacy – and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[7]

21.    One study on website privacy determined that U.S. consumers valued the restriction of improper access to their PII between $11.33 and $16.58 per website.[8]

22.    Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

### Theft of PII Has Grave and Lasting Consequences for Victims

23.    A data breach is an incident in which sensitive, protected, or confidential data has potentially been viewed, stolen, or used by an individual unauthorized to do so. As more consumers rely on the internet and apps on their phone and other devices to conduct every-day transactions, data breaches are becoming increasingly more harmful.

24.    Theft or breach of PII is serious. The California Attorney General recognizes that "[f]oundational" to every Californian's constitutional right to privacy is "information security: if

---

[5]    Steve Lohr, *You Want My Personal Data? Reward Me for It*, N.Y. Times (July 16, 2010) *available at* https://www.nytimes.com/2010/07/18/business/ 18unboxed.html.
[6]    *See* Julia Angwin and Emil Steel, *Web's Hot New Commodity: Privacy*, Wall Street Journal (Feb. 28, 2011) *available at* https://www.wsj.com/articles/SB10001424052748703529004576 160764037920274.
[7]    Janice Y. Tsai, et al., *The Effect of Online Privacy Information on Purchasing Behavior, An Experimental Study Information Systems Research* 22(2) 254, 254 (June 2011), *available at* https://www.jstor.org/stable/23015560?seq=1#
[8]    Il–Horn, Hann, et al., *The Value of Online Information Privacy: An Empirical Investigation* (Mar. 2003) at table 3, *available at* https://ideas.repec.org/p/wpa/wuwpio/0304001.html (emphasis added).

- 6 -

CLASS ACTION COMPLAINT

KAZEROUNI
LAW GROUP, APC

companies collect consumers' personal data, they have a duty to secure it. An organization cannot protect people's privacy without being able to secure their data from unauthorized access."[9]

25.    The United States Government Accountability Office noted in a June 2007 report on Data Breaches ("GAO Report") that identity thieves use PII to take over existing financial accounts, open new financial accounts, receive government benefits and incur charges and credit in a person's name.[10] As the GAO Report states, this type of identity theft is so harmful because it may take time for the victim to become aware of the theft and can adversely impact the victim's credit rating.

26.    In addition, the GAO Report states that victims of identity theft will face "substantial costs and inconveniences repairing damage to their credit records … [and their] good name." According to the FTC, identity theft victims must spend countless hours and large amounts of money repairing the impact to their good name and credit record.[11]

27.    Identity thieves use personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.[12] According to Experian, "[t]he research shows that personal information is valuable to identity thieves, and if they can get access to it, they will use it" to among other things: open a new credit card or loan; change a billing address so the victim no longer receives bills; open new utilities; obtain a mobile phone; open a bank account and write bad checks; use a debit card number to withdraw funds; obtain a new driver's license or ID; use the victim's information in the event of arrest or court action.[13]

---

[9]    California Data Breach Report, Kamala D. Harris, Attorney General, California Department of Justice, February 2016.
[10]    *See* GAO, GAO Report 9 (2007) *available at* http:///www.gao.gov/new.items/d07737.pdf.
[11]    *See* FTC Identity Theft Website: https://www.consumer.ftc.gov/features/feature-0014-identity-theft.
[12]    The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 C.F.R. § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer, or taxpayer identification number." *Id.*
[13]    *See* Susan Henson, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself?*, EXPERIAN (Sept. 7, 2017), *available at* https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.

- 7 -

KAZEROUNI LAW GROUP, APC

28.    Social Security numbers, for example, are among the worst kind of personal information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number, as is the case here, can lead to identity theft and extensive financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[14]

29.    According to the IBM and Ponemon Institute's 2019 "Cost of a Data Breach" report, the average cost of a data breach per consumer was $150 per record.[15] Other estimates have placed the costs even higher. The 2013 Norton Report estimated that the average cost per victim of identity theft – a common result of data breaches – was $298 dollars.[16] And in 2019, Javelin Strategy & Research compiled consumer complaints from the FTC and indicated that the median out-of-pocket cost to consumers for identity theft was $375.[17]

30.    A person whose PII has been compromised may not see any signs of identity theft for years. According to the GAO Report:

> "[L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm."

---

[14]    Brian Naylor, Victims of Social Security Number Theft Find It's Hard to Bounce Back, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying- about-identity-theft.
[15]    Brook, *What's the Cost of a Data Breach in 2019, supra.*
[16]    Norton By Symantec, 2013 Norton Report 8 (2013), *available at* https://yle.fi/tvuutiset/uutiset/upics/liitetiedostot/norton_raportti.pdf.
[17]    Facts + Statistics: *Identity Theft and Cybercrime*, Insurance Information Institute, *available at* https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime (citing the Javelin report).

CLASS ACTION COMPLAINT

KAZEROUNI
LAW GROUP, APC

31.    For example, in 2012, hackers gained access to LinkedIn's users' passwords. However, it was not until May 2016, four years after the breach, that hackers released the stolen email and password combinations.[18]

32.    It is within this context that Plaintiff and thousands of similar homeowners must now live with the knowledge that their PII is forever in cyberspace and was taken by unauthorized persons willing to use the information for any number of improper purposes and scams, including making the information available for sale on the dark web and/or the black market.

### The Data Breach

33.    On or around April 6, 2022, Defendant issued an official Notice of Data Breach to Plaintiff and its other homeowners who were victims of the Data Breach stating, "[A security incident involving unauthorized access to our file servers was identified in early December 2021. Steps were immediately taken to contain the incident, notify law enforcement, and a forensic investigation firm was engaged."

34.    According to Defendant, its "investigation determined that an unauthorized person obtained access to files on our file storage servers from October 27, 2021 to December 7, 2021. The accessed files were then reviewed by our investigation team to identify the content." The Notice of Data Breach went on to state, "On March 7, 2022, the review process generated a preliminary list of individuals, including you, whose name, address, loan number, and Social Security number were included in the files. For some, the accessed files may also have included information provided in connection with a loan application, loan modification, or other items regarding loan servicing."

35.    Defendant's Notice of Data Breach letter provided little other information regarding the Data Breach itself. For instance, Defendant provided no details regarding how the unauthorized access occurred, and no information regarding why it waited months since learning of the data breach and identifying Plaintiff and other affected homeowners to send them notice or how many people were affected by the Data Breach.

---

[18]    See Cory Scott, *Protecting Our Members*, LINKEDIN (May 18, 2016), *available at* https://blog.linkedin.com/2016/05/18/protecting-our-members.

KAZEROUNI
LAW GROUP. APC

36.     As a result of the Data Breach, Plaintiff has suffered an invasion and loss of Plaintiff's privacy, and Plaintiff has spent additional time monitoring Plaintiff's personal financial accounts, which was time that Plaintiff otherwise would have spent performing other activities or leisurely events for the enjoyment of life rather than mitigating the impact of the Data Breach.

37.     As a result of the Data Breach, Plaintiff is and will continue to be at heightened risk for financial fraud, mortgage fraud, and/or identity theft, and the associated damages resulting from it, for years to come.

### Defendant Knew or Should Have Known PII Are High Risk Targets

38.     Defendant knew or should have known that PII like that at issue here, is a high-risk target for identity thieves.

39.     The Identity Theft Resource Center reported that the banking/credit/financial sector had the third largest number of breaches in 2018. According to the ITRC this sector suffered 135 data breaches exposing at least 1,709,013 million records in 2018.[19]

40.     Prior to the breach there were many reports of high-profile data breaches that should have put a company like Defendant on high alert and forced it to closely examine its own security procedures, as well as those of third parties with which it did business and gave access to its subscriber PII. Notable breaches included Capital One, which announced that in March 2019 a hacker had gained access to 100 million U.S. customer accounts and credit card applications. Similarly, in May 2019, First American Financial reported a security incident on its website that potentially exposed 885 million real estate and mortgage related documents, among others. Across industries, financial services have the second-highest cost per breached record, behind healthcare. In financial services, an average breach costs $210 per record, while a "mega breach," like Capital One's, can cost up to $388 per record.[20]

---

[19]     Identity Theft Resource Center, *2018 End-of-Year Data Breach Report, available at* https://www.idtheftcenter.org/wp-content/uploads/2019/02/ITRC_2018-End-of-Year-Aftermath_FINAL_V2_combinedWEB.pdf.
[20]     Samantha Ann Schwartz, *62% of breached data came from financial services in 2019,* CioDive (Dec. 23, 2019), *available at* https://www.ciodive.com/news/62-of-breached-data-came-from-financial-services-in-2019/569592/.

- 10 -

KAZEROUNI
LAW GROUP, APC

41.     Anurag Kahol, CTO of Bitglass recently commented that "[g]iven that organizations in the financial services industry are entrusted with highly valuable, personally identifiable information (PII), they represent an attractive target for cybercriminals[.]" HelpNetSecurity reports that "[h]acking and malware are leading the charge against financial services and the costs associated with breaches are growing. Financial services organizations must get a handle on data breaches and adopt a proactive security strategy if they are to properly protect data from an evolving variety of threats."[21]

42.     As such, Defendant was aware that PII is at high risk of theft, and consequently should have but did not take appropriate and standard measures to protect Plaintiff's and Class members' PII against cyber-security attacks that Defendant should have anticipated and guarded against.

## CLASS ACTION ALLEGATIONS

43.     Pursuant to Cal. Code Civ. Proc. § 382 and Cal. Civ. Code § 1781, Plaintiff seeks to represent and intends to seek certification of a class (the "Class") defined as:

***All California residents whose PII was subjected to the Data Breach.***

44.     Excluded from the Class are: (1) Defendant and its officers, directors, employees, principals, affiliated entities, controlling entities, agents, and other affiliates; (2) the agents, affiliates, legal representatives, heirs, attorneys at law, attorneys in fact, or assignees of such persons or entities described herein; and (3) the Judge(s) assigned to this case and any members of their immediate families.

45.     Certification of Plaintiff's claims for class wide treatment is appropriate because Plaintiff can prove the elements of their claims on a class wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

46.     The Class members are so numerous and geographically dispersed throughout California that joinder of all Class members would be impracticable. While the exact number of

[21]     HelpNetSecurity, *Hacking and malware cause 75% of all data breaches in the financial services industry* (Dec. 17, 2019), *available at* https://www.helpnetsecurity.com/2019/12/17/data-breaches-financial-services/.

- 11 -
CLASS ACTION COMPLAINT

KAZEROUNI
LAW GROUP, APC

1   Class members is unknown, based upon information and belief Plaintiff estimates the number to be

2   in the tens or hundreds of thousands. Defendant acknowledges the Data Breach, and based on

3   information and belief, the Class consists of tens of thousands of Defendant's customers in

4   California, including Plaintiff and the Class members. Plaintiff therefore believes that the Class is

5   so numerous that joinder of all members is impractical.

6       47.    Plaintiff's claims are typical of the claims of the Class. Plaintiff, like all proposed

7   members of the Class, had their PII compromised in the Data Breach. Plaintiff and Class members

8   were injured by the same wrongful acts, practices, and omissions committed by Defendant, as

9   described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that

10   give rise to the claims of all Class members.

11       48.    There is a well-defined community of interest in the common questions of law and

12   fact affecting Class members. The questions of law and fact common to Class members

13   predominate over questions affecting only individual Class members, and include without

14   limitation:

15          (a) Whether Defendant had a duty to implement and maintain reasonable security

16             procedures and practices appropriate to the nature of the PII it collected, stored,

17             and maintained from Plaintiff and Class members;

18          (b) Whether Defendant breached its duty to protect the PII of Plaintiff and each Class

19             member; and

20          (c) Whether Plaintiff and each Class member are entitled to damages and other

21             equitable relief.

22       49.    Plaintiff will fairly and adequately protect the interests of the Class members.

23   Plaintiff is an adequate representative of the Class in that Plaintiff has no interests adverse to or that

24   conflicts with the Class Plaintiff seeks to represent. Plaintiff has retained counsel with substantial

25   experience and success in the prosecution of complex consumer protection class actions of this

26   nature.

27       50.    A class action is superior to any other available method for the fair and efficient

28   adjudication of this controversy since individual joinder of all Class members is impractical.

CLASS ACTION COMPLAINT

KAZEROUNI
LAW GROUP, APC

1  Furthermore, the expenses and burden of individual litigation would make it difficult or impossible

2  for the individual members of the Class to redress the wrongs done to them, especially given that

3  the damages or injuries suffered by each individual member of the Class are outweighed by the

4  costs of suit. Even if the Class members could afford individualized litigation, the cost to the court

5  system would be substantial and individual actions would also present the potential for inconsistent

6  or contradictory judgments. By contrast, a class action presents fewer management difficulties and

7  provides the benefits of single adjudication and comprehensive supervision by a single court.

8      51.    Defendant has acted or refused to act on grounds generally applicable to the entire

9  Class, thereby making it appropriate for this Court to grant final injunctive, including public

10 injunctive relief, and declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Violation of the California Consumer Privacy Act of 2018 ("CCPA")
### Cal. Civ. Code §§ 1798.100, *et seq.*

15     52.    Plaintiff reallege and incorporates by reference all proceeding paragraphs as if fully

16 set forth herein.

17     53.    As more personal information about consumers is collected by businesses,

18 consumers' ability to properly protect and safeguard their privacy has decreased. Consumers entrust

19 businesses with their personal information on the understanding that businesses will adequately

20 protect it from unauthorized access. The California Legislature explained: "The unauthorized

21 disclosure of personal information and the loss of privacy can have devasting effects for individuals,

22 ranging from financial fraud, identity theft, and unnecessary costs to personal time and finances, to

23 destruction of property, harassment, reputational damage, emotional stress, and even potential

24 physical harm."[22]

25     54.    As a result, in 2018, the California Legislature passed the CCPA, giving consumers

26 broad protections and rights intended to safeguard their personal information. Among other things,

27

28 [22]    California Consumer Privacy Act (CCPA) Compliance, https://buyergenomics.com/ccpa-complience/.

- 13 -

KAZEROUNI
LAW GROUP, APC

1  the CCPA imposes an affirmative duty on businesses that maintain personal information about

2  California residents to implement and maintain reasonable security procedures and practices that are

3  appropriate to the nature of the information collected. Defendant failed to implement such

4  procedures which resulted in the Data Breach.

5       55.    It also requires "[a] business that discloses personal information about a California

6  resident pursuant to a contract with a nonaffiliated third party . . . [to] require by contract that the

7  third party implement and maintain reasonable security procedures and practices appropriate to the

8  nature of the information, to protect the personal information from unauthorized access, destruction,

9  use, modification, or disclosure." 1798.81.5(c).

10       56.    Section 1798.150(a)(1) of the CCPA provides: "Any consumer whose nonencrypted

11  or nonredacted personal information, as defined [by the CCPA] is subject to an unauthorized access

12  and exfiltration, theft, or disclosure as a result of the business' violation of the duty to implement

13  and maintain reasonable security procedures and practices appropriate to the nature of the

14  information to protect the personal information may institute a civil action for" statutory or actual

15  damages, injunctive or declaratory relief, and any other relief the court deems proper.

16       57.    Plaintiff and Class members are "consumer[s]" as defined by Civ. Code

17  § 1798.140(g) because they are "natural person[s] who [are] California resident[s], as defined in

18  Section 17014 of Title 18 of the California Code of Regulations, as that section read on September

19  1, 2017."

20       58.    Defendant is a "business" as defined by Civ. Code § 1798.140(c) because Defendant:

21            a)    is a "sole proprietorship, partnership, limited liability company,

22                corporation, association, or other legal entity that is organized or operated

23                for the profit or financial benefit of its shareholders or other owners";

24            b)    "collects consumers' personal information, or on the behalf of which is

25                collected and that alone, or jointly with others, determines the purposes and

26                means of the processing of consumers' personal information";

27            c)    does business in and is headquartered in California; and

28

- 14 -

KAZEROUNI
LAW GROUP, APC

d) has annual gross revenues in excess of $25 million; annually buys, receives for the business' commercial purposes, sells or shares for commercial purposes, alone or in combination, the personal information of 50,000 or more consumers, households, or devices; or derives 50 percent or more of its annual revenues from selling consumers' personal information.

59. The PII accessed and taken by unauthorized persons in the Data Breach is "personal information" as defined by Civil Code § 1798.81.5(d)(1)(A) because it contains Plaintiff's and other Class members' unencrypted names, addresses, loan account numbers, and Social Security numbers, among other personal information.

60. Plaintiff's PII was subject to unauthorized access and exfiltration, theft, or disclosure because his PII, including name, address, loan account number, and Social Security number, at minimum, wrongfully accessed, viewed, and/or taken by unauthorized persons in the Data Breach.

61. The Data Breach occurred as a result of Defendant's failure to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect Plaintiff's and Class members' PII. Defendant failed to implement reasonable security procedures to prevent an attack on its servers by hackers and to prevent unauthorized access of Plaintiff's and Class members' PII as a result of the Data Breach.

62. On or about April 21, 2022, Plaintiff provided Defendant with written notice of its violations of the CCPA, pursuant to Civil Code § 1798.150(b)(1). *See* Exhibit A. If Defendant does not cure the violation within 30 days, Plaintiff will amend their complaint to pursue statutory damages as permitted by Civil Code § 1798.150(a)(1)(A).

63. As a result of Defendant's failure to implement and maintain reasonable security procedures and practices that resulted in the Data Breach, Plaintiff, on behalf of himself individually and the Class, seeks actual damages, equitable relief, including public injunctive relief, and declaratory relief, and any other relief as deemed appropriate by the Court.

KAZEROUNI
LAW GROUP, APC

## SECOND CAUSE OF ACTION

### Violation of the California Unfair Competition Law ("UCL")

### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

64.     Plaintiff re-alleges and incorporates by reference all proceeding paragraphs as if fully set forth herein.

65.     The UCL prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising, as those terms are defined by the UCL and relevant case law. By virtue of the above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Defendant engaged in unlawful, unfair, and fraudulent practices within the meaning, and in violation of, the UCL.

66.     In the course of conducting its business, Defendant committed "unlawful" business practices by, *inter alia*, knowingly failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect Plaintiff's and Class members' PII, and by violating the statutory and common law alleged herein, including, *inter alia*, California Consumer Privacy Act of 2018 (Cal. Civ. Code §§ 1798.100, *et seq.*) and Article I, Section 1 of the California Constitution (California's constitutional right to privacy) and Civil Code § 1798.81.5. Plaintiff and Class members reserve the right to allege other violations of law by Defendant constituting other unlawful business acts or practices. Defendant's above-described wrongful actions, inaction, omissions, and want of ordinary care are ongoing and continue to this date.

67.     Defendant also violated the UCL by failing to timely notify Plaintiff and Class members pursuant to Civil Code § 1798.82(a) regarding the unauthorized access and disclosure of their PII. If Plaintiff and Class members had been notified in an appropriate fashion, they could have taken precautions to better safeguard and protect their PII and identities.

68.     Defendant's above-described wrongful actions, inaction, omissions, want of ordinary care, misrepresentations, practices, and non-disclosures also constitute "unfair" business acts and practices in violation of the UCL in that Defendant's wrongful conduct is substantially injurious to

KAZEROUNI
LAW GROUP, APC

1    consumers, offends legislatively-declared public policy, and is immoral, unethical, oppressive, and

2    unscrupulous. Defendant's practices are also contrary to legislatively declared and public policies

3    that seek to protect PII and ensure that entities who solicit or are entrusted with personal data utilize

4    appropriate security measures, as reflected by laws such as the CCPA, Article I, Section 1 of the

5    California Constitution, and the FTC Act (15 U.S.C. § 45). The gravity of Defendant's wrongful

6    conduct outweighs any alleged benefits attributable to such conduct. There were reasonably

7    available alternatives to further Defendant's legitimate business interests other than engaging in the

8    above-described wrongful conduct.

9       69.    The UCL also prohibits any "fraudulent business act or practice." Defendant's

10    above-described claims, nondisclosures and misleading statements were false, misleading, and

11    likely to deceive the consuming public in violation of the UCL.

12       70.    As a direct and proximate result of Defendant's above-described wrongful actions,

13    inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach

14    and its violations of the UCL, Plaintiff and Class members have suffered (and will continue to

15    suffer) economic damages and other injury and actual harm in the form of, *inter alia*, (i) an

16    imminent, immediate and the continuing increased risk of identity theft and identity fraud – risks

17    justifying expenditures for protective and remedial services for which they are entitled to

18    compensation, (ii) invasion of privacy, (iii) breach of the confidentiality of their PII, (iv) statutory

19    damages under the CCPA, (v) deprivation of the value of their PII for which there is a well-

20    established national and international market, and/or (vi) the financial and temporal cost of

21    monitoring their credit, monitoring financial accounts, and mitigating damages.

22       71.    Unless restrained and enjoined, Defendant will continue to engage in the above-

23    described wrongful conduct and more data breaches will occur. Plaintiff, therefore, on behalf of

24    himself, the Class members, and the general public, also seeks restitution and an injunction,

25    including public injunctive relief prohibiting Defendant from continuing such wrongful conduct,

26    and requiring Defendant to modify its corporate culture and design, adopt, implement, control,

27    direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies,

28    procedures protocols, and software and hardware systems to safeguard and protect the PII entrusted

KAZEROUNI
LAW GROUP, APC

1     to it, as well as all other relief the Court deems appropriate, consistent with Bus. & Prof. Code

2     § 17203.

3

### PRAYER FOR RELIEF

4       **WHEREFORE**, Plaintiff, on behalf of himself individually as well as all members of the

5     Class respectfully requests that (i) this action be certified as a class action, (ii) Plaintiff each be

6     designated a representative of the Class, (iii) Plaintiff's counsel be appointed as counsel for the

7     Class. Plaintiff, on behalf of himself and members of the Class further request that upon final trial

8     or hearing, judgment be awarded against Defendant for:

9            (i)     actual and punitive damages to be determined by the trier of fact;

10         (ii)     equitable relief, including restitution;

11        (iii)     pre- and post-judgment interest at the highest legal rates applicable;

12         (iv)     appropriate injunctive relief;

13          (v)     attorneys' fees and litigation expenses under Code of Civil Procedure

14               § 1021.5 and other applicable law;

15         (vi)     costs of suit; and

16        (vii)     such other and further relief the Court deems just and proper.

17

### DEMAND FOR JURY TRIAL

18       Plaintiff, on behalf of himself and the putative class, hereby demands a jury trial on all issues

19     so triable.

20

21     Dated: April 21, 2022                      **KAZEROUNI LAW GROUP, APC**

22

23                                  By: _____

24                                       ABBAS KAZEROUNIAN, ESQ.
                                      MONA AMINI, ESQ.

25                                  *Attorneys for Plaintiff and the putative Class*

26

27

28

KAZEROUNI
LAW GROUP, APC



EXHIBIT A

# KAZEROUNI
# LAW GROUP, APC

Telephone: (800) 400-6808
Facsimile: (800) 520-5523
www.kazlg.com

April 21, 2022

**VIA CERTIFIED MAIL**
Pingora Loan Servicing, LLC
1819 Wazee Street, 2nd Floor
Denver, CO 80202

### Re:   Michael Garcia v. Pingora Loan Servicing, LLC

To Whom It May Concern:

We represent Plaintiff Michael Garcia ("Plaintiff") and all other similarly situated consumers in a putative class action against Pingora Loan Servicing, LLC ("Defendant") arising out of, *inter alia*, Defendant's failure to provide reasonable security for Plaintiff's and the proposed class members' personal information, which resulted in the unauthorized access, theft, or disclosure of this information (the "Data Breach"). To our knowledge the Data Breach occurred on between October 27, 2021 to December 7, 2021, as specified in Defendant's "Notice of Data Breach" letter dated April 6, 2022.

The full claims, including the facts and circumstances surrounding these claims are detailed in Plaintiff's Class Action Complaint, a copy of which is attached and incorporated by reference. Defendant's conduct constitutes violations of California Civil Code §§ 1798.81.5(a)(1) and 1798.150(a)(1) among other consumer protection statutes.

While this letter and the attached Complaint constitute sufficient notice of the claims asserted against Defendant, pursuant to California Civil Code 1798.150(b)(1), Plaintiff demands that, in the event a cure is possible, Defendant is hereby provided the opportunity to actually cure the noticed violations and provide Plaintiff with an express written statement within thirty (30) days that the violations have been cured and that no further violations shall occur. A cure, if possible, requires that all the information taken has been recovered and that Plaintiff and the proposed class members of similarly situated persons are not at any risk of any of the information being used.

Thank you for your time and attention to this matter.

Sincerely,

*s/Abbas Kazerounian*

Abbas Kazerounian, Esq.
KAZEROUNI LAW GROUP, APC
Direct Line: (800) 400-6808, Ext. 2
E-mail: ak@kazlg.com

[Enclosure]

**CALIFORNIA - NEVADA - TEXAS - ARIZONA - MINNESOTA - WASHINGTON**

# EXHIBIT C

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Abbas Kazerounian (249203), Mona Amini (296829)
KAZEROUNI LAW GROUP, APC
245 Fischer Ave., Unit D1, Costa Mesa, CA 92626

TELEPHONE NO.: (800) 400-6808   FAX NO. (Optional): (800) 520-5523
ATTORNEY FOR (Name): Plaintiff, Michael Garcia

**FOR COURT USE ONLY**

**FILED/ENDORSED**
Clerk of the Superior Court

APR 22 2022

By K. Fellersen
**DEPUTY CLERK**

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SOLANO
STREET ADDRESS: 580 Texas Street
MAILING ADDRESS:
CITY AND ZIP CODE: Fairfield, CA 94533
BRANCH NAME: Old Solano Courthouse

CASE NAME:
Michael Garcia v. Pingora Loan Servicing, LLC

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER |
|---|---|---|
| [x] Unlimited (Amount demanded exceeds $25,000) □ Limited (Amount demanded is $25,000) | □ Counter  □ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | FCS058137 |

JUDGE: Stephen Gizzi
DEPT: 3

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- □ Auto (22)
- □ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- □ Asbestos (04)
- □ Product liability (24)
- □ Medical malpractice (45)
- □ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [x] Business tort/unfair business practice (07)
- □ Civil rights (08)
- □ Defamation (13)
- □ Fraud (16)
- □ Intellectual property (19)
- □ Professional negligence (25)
- □ Other non-PI/PD/WD tort (35)

**Employment**
- □ Wrongful termination (36)
- □ Other employment (15)

**Contract**
- □ Breach of contract/warranty (06)
- □ Rule 3.740 collections (09)
- □ Other collections (09)
- □ Insurance coverage (18)
- □ Other contract (37)

**Real Property**
- □ Eminent domain/Inverse condemnation (14)
- □ Wrongful eviction (33)
- □ Other real property (26)

**Unlawful Detainer**
- □ Commercial (31)
- □ Residential (32)
- □ Drugs (38)

**Judicial Review**
- □ Asset forfeiture (05)
- □ Petition re: arbitration award (11)
- □ Writ of mandate (02)
- □ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- □ Antitrust/Trade regulation (03)
- □ Construction defect (10)
- □ Mass tort (40)
- □ Securities litigation (28)
- □ Environmental/Toxic tort (30)
- □ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- □ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- □ RICO (27)
- □ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- □ Partnership and corporate governance (21)
- □ Other petition (not specified above) (43)

2. This case [x] is  □ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. □ Large number of separately represented parties
   b. [x] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [x] Substantial amount of documentary evidence
   d. [x] Large number of witnesses
   e. □ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. □ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [x] monetary  b. [x] nonmonetary; declaratory or injunctive relief  c. [x] punitive

4. Number of causes of action (specify): two: (1) California Consumer Privacy Act, Cal. Civ. Code §§ 1798.100; (2) California Unfair Competition Law, Cal. Bus. & Prof. §§ 17200 et seq.

5. This case [x] is  □ is not  a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: April 21, 2022

Abbas Kazerounian
_(TYPE OR PRINT NAME)_      _(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)_

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

**CIVIL CASE COVER SHEET**

For your protection and privacy, please press the Clear

# EXHIBIT D



**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SOLANO**

**CIVIL DIVISION**

☑ OLD SOLANO COURTHOUSE
580 Texas Street
Fairfield, CA 94533
(707) 207-7330

☐ HALL OF JUSTICE
600 Union Avenue
Fairfield, CA 94533
(707) 207-7330

Plaintiff(s):    MICHAEL GARCIA

Defendant(s): PINGORA LOAN SERVICING, LLC

Case No.  FCS058137

**NOTICE OF CASE MANAGEMENT
CONFERENCE ONE
AND
NOTICE OF ASSIGNMENT OF
JUDGE FOR ALL PURPOSES**

**PURSUANT TO LOCAL RULES AND BY ORDER OF THIS COURT, THIS MATTER HAS BEEN
CALENDARED FOR CASE MANAGEMENT CONFERENCE ONE:**

    **Date:** 08/30/2022              **Time:** 9:30 a.m.

**THIS MATTER HAS BEEN ASSIGNED FOR ALL PURPOSES TO:**
Judge Stephen Gizzi, Department 3

**ALL HEARINGS WILL BE HELD AT:** 580 Texas Street, Fairfield, California 94533

The obligations of counsel, or any party not represented by an attorney, in regard to Case Management
Conference One and any Case Management Conference Two set by the court are as follows:

1.    Service of the complaint must be within sixty (60) calendar days of the date of filing.

2.    Service and filing of any responsive pleadings must be within thirty (30) days after service of the
complaint. The time for filing responsive pleadings may not be extended except as authorized by law.
Appearance at the Case Management Conference does not excuse a litigant from the requirement of filing and
serving a responsive pleading within this deadline.

3.    Plaintiff shall serve a copy of this *Notice of Case Management Conference One and Notice of Assignment
of Judge for All Purposes ("Notice of CMC One")* on all defendants with the complaint.

4.    Any party serving a cross-complaint shall serve a copy of this *Notice of CMC One* on each cross-
defendant with the cross-complaint.

5.    Any cross-complaint served after Case Management Conference One has been held shall have a *Notice
of Case Management Conference Two* served with it.

6.    At least thirty days before the date set for Case Management Conference One, all counsel and self-
represented parties shall comply with the meet and confer obligations of California Rules of Court, rule 3.724.

7.    A *Case Management Statement* (Judicial Council form CM-110) shall be filed with the court and served on
all parties by each counsel by the 15th calendar day before the date set for Case Management Conference
One.

8.    At least one party demanding a jury on each side of a civil case must pay a nonrefundable fee of $150.00
on or before the initial case management conference or as otherwise provided by statute.

**NOTICE OF CMC ONE AND NOTICE OF ASSIGNMENT OF JUDGE**

9. At Case Management Conference One the court shall inform counsel and self-represented parties of the date, time and place for Case Management Conference Two and shall make any orders regarding what is expected that counsel and self-represented parties will accomplish in regard to the case before the filing of the Case Management Statement for Case Management Conference Two.

10. Each counsel shall complete, file, and serve on all parties a completed Case Management Statement by the 15th calendar day before the date set for Case Management Conference Two.

11. At any Case Management Conference, counsel shall be completely aware of all procedural, factual, and legal aspects of the case, and have full authority to discuss and resolve any issues that arise at the conference, including settlement of the case. This applies equally to both attorneys of record and specially-appearing counsel.

12. The court may impose sanctions pursuant to Solano County Local Rules, rule 4.6, in the event that a Case Management Statement is not timely filed and/or served, or is not fully completed, or the requirements of Rule 4.6 are not met.

COUNSEL AND SELF-REPRESENTED PARTIES ARE OBLIGATED TO REVIEW AND COMPLY WITH LOCAL AND STATEWIDE RULES REGARDING CIVIL LITIGATION. They are available at:
*http://www.courts.ca.gov/rules.htm*
*http://www.solano.courts.ca.gov/LocalRulesofCourt.html*

### AFFIDAVIT OF SERVICE

I, the undersigned, declare under penalty of perjury that I am employed as a deputy clerk of the above-entitled court and not a party to the within-entitled action, and that I served this notice as follows:

☐     I personally served the person named below on (*date*):_____ at
(*time*)_____.

Name: _____

    ☐ Party        ☐ Attorney of Record        ☐ Representative

I,_____, acknowledge receipt of a copy of this *Notice of Case Management Conference One and Notice of Assignment of Judge for All Purposes*.

Date: _____          _____
                                                          Signature

☐     I caused to be placed a true copy of this notice in an envelope which was then sealed and postage fully prepaid on the date shown below; that I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service; that the above stated document will be deposited in the Superior Court of California, County of Solano's outgoing mailbox for collection by county mail carriers on the date indicated. Said envelope was addressed to the attorneys for the parties, or the parties, as shown below:

☐ See attached for additional service addresses

Date: 04/28/2022                          Clerk of the Court
                                                      Superior Court of California, County of Solano

                                                      By: _K. Fellersen_____

                                                              Deputy Clerk

**NOTICE OF CMC ONE AND NOTICE OF ASSIGNMENT OF JUDGE**

0900-CV  REV. 01-01-2020                                                                                  Page 2 of 2

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SOLANO**

[  ] 580 Texas Street, Fairfield, CA 94533

[  ] 321 Tuolumne Street, Vallejo, ca 94590

## **AFFIDAVIT OF PICK UP BOX SERVICE**     Case No. FCS058137

     I, the undersigned, certify under penalty of perjury that I am employed as a deputy clerk of the above-entitled court and not a party to the within-entitled action, that I served the attached [ **X** ] Notice of Case Management Conference  [  ] Notice of Status Conference [  ] Notice re: Collection Cases on the person/business and/or law office via pick up box on the date shown below:

**REPRESENTATIVE:**         **NEXT LEVEL SERVICE**

**FOR:**               **KAZEROUNI LAW GROUP**
                        (law firm/ business/ pro per)

Date:   April 28, 2022

                           By:_____ K. FELLERSEN _K. Fellersen_
                                   Deputy Clerk

---

AFFIDAVIT OF PICK-UP BOX SERVICE

Rev. 10/21

# EXHIBIT E

**SUPERIOR COURT OF CALIFORNIA**
**COUNTY OF SOLANO**

☐ **600 Union Ave, Fairfield, CA  94533**    ☒ **580 Texas Street, Fairfield, CA 94533**

**CERTIFICATE AND AFFIDAVIT OF MAILING**        **CASE NO: FCS058137**
I, the undersigned, certify under penalty of perjury that I am employed as a deputy clerk
of the above-entitled court and am not a party to the within-entitled action; that I served
the attached document:

CLERK'S APPLICATION AND ORDER

By causing to be placed a true copy thereof in an envelope which was then sealed and
postage fully prepaid on the date shown below; that I am readily familiar with the
business practice for collection and processing of correspondence for mailing with the
United States Postal Service; that the above stated document will be deposited in the
Superior Court of California, County of Solano's outgoing mailbox for collection by
county mail carriers on the date indicated.  Said envelope was addressed to the attorneys
for the parties, or the parties, as shown below:

ABBAS KAZEROUNIAN
KAZEROUNI LAW GROU
245 FISCHER AVE, UNIT D1
COSTA MESA, CA 92626
*Attorney for Plaintiff*

Dated: May 2, 2022          By: _____ K. FELLERSEN  *K. Fellersen*
                                          Deputy Clerk

CERTIFICATE AND AFFIDAVIT OF MAILING

| PLAINTIFF: | |
|---|---|
| GARCIA | CASE NO. FCS058137 |
| DEFENDANT: Pingora Loan Servicing<br>~~PINGORZ LOAN SERVICING~~ (Ω) | CLERK'S APPLICATION<br>AND ORDER |

I, the undersigned, employed as a Legal Process Clerk for the above-entitled court, apply for an order as follows:

☐ vacating default described below.

☐ vacating judgment described below.

☐ vacating answer and/or other responsive pleading described below.

☑ complex case determination pursuant to CRC 3.403

☐ Other: _____

Document: CIVIL CASE COVER SHEET

Date filed: 04/22/2022

Reason: Civil case cover sheet indicates case is complex and class action on line 2 and
line 5.
_____
_____

**FILED/ENDORSED**
Clerk of the Superior Court

**MAY 02 2022**

By K. Fellersen
DEPUTY CLERK

I certify under penalty of perjury that the foregoing is true and correct.

Executed on 04/28/2022 _____, at Fairfield, California.

By: K. FELLERSEN   K. Fellersen
Deputy Clerk

---

## ORDER

Upon consideration of the clerk's application and review of the court file:

**IT IS ORDERED:**

☐ The default(s) of the defendant(s) named in the clerk's application is (are) vacated.

☐ The judgment entered on _____ is vacated.

☐ The answer and/or other responsive pleading is vacated.

☒ Case is determined to be complex (CRC 3.403)   ☐ Case is determined not to be complex (CRC 3.403).

☐ Complex Case fees of $1,000.00 due per defendant within 10 days of the mailing of this order.

☐ Set for complex case determination hearing on _____ at _____ in Dept _____.

☐ Other: _____

Dated: 4/29/22 _____   _____
JUDGE

---

CLERK'S APPLICATION AND ORDER